**Hans D'AGASTINO, Plaintiff–Appellant,**

v.

**CITY OF WARREN; Richard Kovach, Defendants–Appellees.**

No. 01–4357.

United States Court of Appeals, Sixth Circuit.

Sept. 24, 2003.

Gregg A. Rossi, Youngstown, OH, for Plaintiff–Appellant.

Amie L. Bruggeman, Stephen W. Funk, Roetzel & Andress, Akron, OH, for Defendant–Appellee.

Before BATCHELDER and CLAY, Circuit Judges; and SCHWARZER,* District Judge.

BATCHELDER, Circuit Judge.

Plaintiff-appellant Hans D'Agastino appeals from the district court's order granting summary judgment in favor of defendant-appellee Officer Richard Kovach, of the City of Warren Police Department, in this action brought pursuant to 42 U.S.C. § 1983 and state law, seeking damages for Kovach's alleged use of excessive force. On appeal, D'Agastino argues that the district court erred in its application of the doctrine of qualified immunity by deciding that the force used by Officer Kovach was reasonable and therefore no constitutional violation had occurred. Because we conclude that a reasonable fact-finder viewing the facts in a light most favorable to D'Agastino could conclude that the force used by Kovach was not objectively reasonable, we will reverse the judgment of

---

* The Honorable William W Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

the district court and remand for proceedings consistent with this opinion.

## BACKGROUND

### Procedural History

This case arises from the defendant's forceful arrest of D'Agastino on June 14, 2000, and the injuries D'Agastino suffered incident to that arrest. D'Agastino brought a two-count complaint against Kovach and the City of Warren; the first count, brought under section 1983, claimed that Officer Kovach used excessive and unreasonable force to arrest him, which caused him severe mental, emotional, and physical injuries; the second count raised the state law claim that Officer Kovach maliciously assaulted and battered him through the use of excessive force without legal justification. Officer Kovach and the City of Warren both moved for summary judgment on both counts. The district court granted the City's motion as to the section 1983 claim, noting that D'Agastino had conceded that he had no evidence to support a finding of liability on the part of the City. The district court granted the City's motion as to the state law claim on grounds of state law immunity. Finding no issues of material fact, the district court granted summary judgment to Officer Kovach on the section 1983 claim because his use of force during the arrest was objectively reasonable and therefore did not violate the Constitution; the court granted Kovach's motion on the state law claim because Kovach's actions during the arrest were not reckless, wanton or malicious, or taken in bad faith, and Kovach was therefore entitled to immunity under state law. D'Agastino timely appealed to this court, challenging the grant of summary judgment to Officer Kovach on both the section 1983 and the state law claims.

### Factual History

Officer Kovach's arrest of D'Agastino at approximately 9:00 p.m. on June 14, 2000, for disorderly conduct while intoxicated was the culmination of several events that occurred throughout the day. That morning, D'Agastino had been involved in a three-car accident in the City of Niles. He was taken to Trumbull Memorial Hospital where, complaining of pain in his neck and back, he was given a CAT scan, MRI, and blood tests, and released around 4:00 p.m. Immediately upon his release, the county sheriff arrested and booked him for failing to appear in court for a required hearing stemming from a previous incident in Niles. He posted bail and proceeded directly to Joe and Kay's bar in Warren to begin --- in his own words --- drinking "enough to kill somebody" in less than an hour.[1]

While still at Joe and Kay's bar, D'Agastino began making "suggestions" to "everybody in the bar" about his desire to commit suicide; he then pulled out a Bowie knife and began shaving his forearm. Leaving the bar, he started back to Trumbull Memorial Hospital in order to admit himself, but turned around and entered another bar, where he told the bartender that he wanted an ambulance. Emergency Medical Services and the police arrived and took D'Agastino back to Trumbull Memorial Hospital, where, as he was being processed in the emergency room, he was apparently told to strip down to his underwear and turn over his valuables. According to D'Agastino, he stood around in the emergency room lobby in his underwear for twenty minutes before deciding "to hell with it," and running out of the hospital.

D'Agastino admits to running into the street, disrupting traffic, and forcing one driver to swerve his vehicle to avoid hitting

---

1. Later that evening, D'Agastino had a .26 recorded blood alcohol level.

him. The police received reports of this activity from both the hospital and the driver of the vehicle, whereupon the police dispatcher sent two messages about D'Agastino to the officers on patrol. The first dispatch advised the officers that a white male in his fifties and wearing only green underwear had escaped from Trumbull Memorial Hospital. The second advised that a citizen had called and complained that this same man had attempted to get inside of the caller's truck by pounding on the window. The dispatcher also told the officers that the subject was HIV positive.

Officer Kovach was the first one to arrive at the scene. At this point in the story, D'Agastino's version of events differs somewhat from Officer Kovach's. After spotting D'Agastino, Officer Kovach claims that he got out of his marked cruiser and told D'Agastino to stop, and that D'Agastino began running towards him and yelling that he wanted to die. D'Agastino, however, claims he began running away from Officer Kovach. Regardless, both agree that the two met in the middle of the road where Officer Kovach hit D'Agastino once in the leg with a police baton, and D'Agastino fell face-forward toward the ground. According to D'Agastino, he broke his fall with one outstretched arm and Officer Kovach repeatedly slammed his face into the pavement, knocking out his teeth and fracturing his jaw. D'Agastino admits to accidentally spitting blood at Kovach, but only after the ambulance arrived and the medical personnel had helped him to his feet.

Officer Kovach, on the other hand, claims that before D'Agastino fell, Kovach hit him for a second time with the baton, this time in the shoulder area, causing D'Agastino to become limp and fall face-first onto the pavement, injuring his face and jaw. Officer Kovach claims he hand-cuffed D'Agastino without any difficulty, but then the plaintiff began spitting blood at Officer Kovach and saying he wanted to die. Moments later, a patrol car from the Braceville police department arrived on the scene and used its overhead lights to alert the other cars driving in the vicinity of the plaintiff and defendant.

D'Agastino was eventually taken to Trumbull Memorial Hospital, where he was diagnosed with a compound comminuted alveolar fracture of the maxilla, a compound comminuted fracture of the left side of the mandible, a compound fracture of the symphysis of the mandible, a displaced fracture of the left mandibular condyle, a probable fracture of the right mandible condyle, a four to five centimeter laceration of the chin through and through, four one to two centimeter lacerations of the lateral borders of the tongue, and multiple teeth fractures and upper teeth crushed into his sinuses. D'Agastino's lawsuit seeks compensation for these injuries, which he claims Officer Kovach caused by his repeated use of excessive force once D'Agastino had been knocked to the ground. The plaintiff concedes that the use of the police baton was reasonable under the circumstances that evening.

## ANALYSIS

*Standard of Review*

We review a district court's grant of summary judgment de novo, using the same standard under Rule 56(c) used by the district court, *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999) (en banc), and we consider the record as it stood before the district court at the time of its ruling. *Niecko v. Emro Marketing Co.*, 973 F.2d 1296, 1303 (6th Cir.1992). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To withstand summary judgment, the non-movant must present sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir.1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

*Qualified Immunity*

Qualified immunity, which the Supreme Court has deemed "the best attainable accommodation of [the] competing values" of deterring abuse of power by government officials and vindicating constitutional guarantees on the one hand, and protecting government officials from frivolous suits that may dampen the ardor with which they carry out their jobs on the other, *Harlow v. Fitzgerald*, 457 U.S. 800, 813–14, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), is an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a rea-

sonable person would have known." *Id.* at 818, 102 S.Ct. 2727.

A court in this circuit undertaking a qualified immunity analysis must first determine whether the plaintiff has alleged a violation of a constitutionally protected right; if so, the court must examine whether the right was clearly established at the time of the alleged violation. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). The right allegedly violated cannot be asserted at a high level of generality, but, instead, "must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). As the Court in *Harlow* explained, the "reasonable person," in this instance, is a "reasonably competent public official [who] should know the law governing his conduct." *Harlow*, 457 U.S. at 819, 102 S.Ct. 2727. To overcome qualified immunity, the right allegedly violated must be so clear that any reasonable public official in the defendant's position would understand that his conduct violated the right: "if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

We have established that there are two ways in which a plaintiff seeking to overcome the bar of qualified immunity can show that a right was clearly established in the law at the time the alleged violation occurred. First, "a district court within this circuit must 'find binding precedent from the Supreme Court, the Sixth Circuit, or ... itself" that directly establishes the conduct in question as a violation of the plaintiff's rights. *Summar v. Bennett*, 157

F.3d 1054, 1058 (6th Cir.1998). If no binding precedent is "directly on point," the court may still find a clearly established right if it can discern a generally applicable principle from either binding or persuasive authorities whose "specific application to the relevant controversy" is "so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Id.; accord Cagle v. Gilley,* 957 F.2d 1347, 1348 (6th Cir.1992).

*Excessive Force*

The essential question before this court is whether–from the facts provided in plaintiff's deposition and shaped by the other evidence–a reasonable finder of fact could conclude that Officer Kovach used excessive force when arresting D'Agastino. The Supreme Court has stressed the importance of beginning the qualified immunity analysis in a Fourth Amendment excessive force case thus: "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). To determine if a constitutional violation has occurred, we must analyze the claim of excessive force under the Fourth Amendment's "objective reasonableness" standard based on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 205, 121 S.Ct. 2151 (internal quotations and citations omitted).

The district court found insufficient evidence to support D'Agastino's claim of excessive force. In particular, the district court relied upon the police dispatcher call records, which show that Officer Kovach and the plaintiff were alone for approximately one and a half minutes, and the fact that D'Agastino admits he tried to get up after being knocked to the pavement. The court concluded that D'Agastino's version of events did not show that Kovach used excessive force, and that, accepting that version of the events, a reasonable officer on the scene would have used a similar degree of force. We disagree.

For purposes of summary judgment, we must take the plaintiff's version of events as true, and we must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, Inc.,* 477 U.S. at 251–52, 106 S.Ct. 2505. This case, although strong from the defendant's perspective, is not so one-sided. Here, D'Agastino testified in his deposition that Kovach repeatedly slammed his face into the pavement. The extent of his injuries, which is not disputed, is not inconsistent with D'Agastino's testimony. We recognize that the credibility of this testimony may be questionable, particularly in light of D'Agastino's undisputed blood alcohol level of .26 that night. Credibility, however, is an issue for the jury, and a jury certainly would be entitled to credit that testimony. But nothing in the district court's opinion indicates that the court credited D'Agastino's testimony that Officer Kovach forcefully and repeatedly slammed his face into the pavement.

The issue before the court, then, is whether, under *Saucier'* s standard of objective reasonableness, if D'Agastino's allegations were established, Officer Kovach's use of force against him was excessive and violated the constitution. More specifically, the question is whether an officer who, after taking a subject to the ground–even

if that suspect is attempting to get to his feet and to evade the officer's attempts to handcuff him–repeatedly slams the subject's face into the pavement, uses force that exceeds that which is reasonably necessary to accomplish the arrest. We do not think that under the circumstances described by D'Agastino, a reasonable officer would believe that slamming the subject's face into the pavement was an objectively reasonable use of force, and we do not read the district court's opinion as holding that such a use of force would be reasonable. Rather, we hold that the district court erred by failing to view the facts in the light most favorable to D'Agastino in reaching its conclusion that no constitutional violation occurred. Further, we hold that the material facts remain in dispute.

The district court ended its qualified immunity inquiry before reaching the next sequential step in the analysis mandated by the Court in *Saucier*. Because we have held that the material facts surrounding this incident are genuinely in dispute, we further hold that a determination with regard to the claim of qualified immunity is not appropriate at this stage in the proceedings but the qualified immunity defense may again be raised by the defendant at trial. We therefore reverse the judgment as to the section 1983 claim and remand the matter for trial.

*Assault and Battery*

"If an officer uses more force than is necessary to make an arrest and protect himself from injury, he is liable for assault and battery...." *City of Cincinnati v. Nelson*, No. C–74321, 1975 Ohio App. LEXIS 7443, *5 (May 5, 1975) (citing 5 O Jur (2d) ARREST §§ 50) (unpublished); *see also Schweder v. Baratko*, 103 Ohio App. 399, 403, 143 N.E.2d 486 (1957) ("Force when used lawfully in making an arrest is in the exercise of a government function, and only in cases where excessive force is used, that is, force going clearly beyond that which is reasonably necessary to make the arrest, can such force be claimed an assault and battery by the person arrested."). An officer, acting in his official capacity, is immune from liability for injury unless his actions were "manifestly outside the scope" of his responsibilities, or the officer acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." O.R.C. § 2744.03(A)(6).

The district court, relying upon its determination that Officer Kovach's actions were objectively reasonable for the purposes of section 1983, found that the defendant's use of force was not malicious or undertaken in bad faith or in a wanton or reckless manner, and held that Officer Kovach was entitled to immunity under Ohio Revised Code § 2744.03. Having reversed the district court's finding of reasonableness for the excessive force claim, we also reverse the district court's grant of summary judgment on the state law assault and battery claim. We again stress that our holding proceeds from the requirement that the district court view all the evidence in a light most favorable to the plaintiff in this case. Because the facts in this record are sufficiently in dispute to require that they be submitted to a jury, it will be up to the jury to determine what exactly happened on the evening in question and then decide whether to hold Officer Kovach responsible for D'Agastino's injuries.

## CONCLUSION

For the reasons set forth above, we REVERSE the decision of the district court and REMAND for trial.