RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0461p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TROY BAKER, and GLENN SNADER, as Father and
Next Friend of Jesse Snader,
                              *Plaintiffs-Appellants,*

            *v.*

CITY OF HAMILTON, OHIO, and ERIC TAYLOR,
                              *Defendants-Appellees.*

No. 05-4390

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 03-00881—S. Arthur Spiegel, Sr., District Judge.

Argued: October 30, 2006

Decided and Filed:  December 18, 2006

Before:  SILER, GILMAN, and GRIFFIN, Circuit Judges.

---

### COUNSEL

---

**ARGUED:** Christopher J. Pagan, REPPER, POWERS & PAGAN, Middletown, Ohio, for
Appellants. Jay D. Patton, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Cincinnati,
Ohio, for Appellees.  **ON BRIEF:** Christopher J. Pagan, REPPER, POWERS & PAGAN,
Middletown, Ohio, for Appellants. Jay D. Patton, SCHROEDER, MAUNDRELL, BARBIERE &
POWERS, Cincinnati, Ohio, for Appellees.

---

### OPINION

---

        GRIFFIN, Circuit Judge.  Plaintiffs Troy Baker and Jesse Snader[1] appeal an order of the
district court granting summary judgment in favor of defendants Eric Taylor and the City of
Hamilton on plaintiffs' constitutional claims of excessive force and Ohio common-law claim for

---

[1]Jesse Snader was a minor at the time this complaint was filed, and, accordingly, this suit was filed on his behalf
by his father, Glenn Snader.

assault and battery.[2]  On appeal, plaintiffs have abandoned their claims against the City of Hamilton and argue only that the district court erred in concluding that Officer Taylor did not violate their constitutional rights, in holding that Officer Taylor is entitled to qualified immunity from plaintiffs' claims, and in dismissing their claims of assault and battery against Officer Taylor.  For the reasons below, we reverse the district court's entry of summary judgment in favor of defendant Taylor and remand for further consideration.  We affirm the summary judgment entered in favor of defendant City of Hamilton.

I.

The parties dispute many of the underlying facts that led to plaintiffs' claims.  Because plaintiffs appeal the district court's entry of summary judgment in favor of defendants, the court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party."  *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001).

This case and appeal regards separate incidents involving Officer Taylor and plaintiffs Baker and Snader.

A.

On December 15, 2002, Troy Baker spent the day drinking and smoking crack cocaine with friends in Hamilton, Ohio.  After drinking approximately six beers and smoking more than one rock of crack while at his friend's house, Baker went to the Village Bar in Hamilton to continue drinking.  Baker drank four or five more beers at the Village Bar before leaving.  After leaving the bar, Baker encountered a drug dealer from whom Baker had previously purchased drugs.  The dealer offered to sell Baker crack, but Baker declined because he was already in possession of enough crack.

During Baker's conversation with the drug dealer, Hamilton Police Officer Eric Taylor and his partner passed by in a police cruiser.  After noticing the cruiser, Baker continued to walk down the street.  Officer Taylor pulled up next to Baker and asked him to stop, but Baker kept walking.  When Officer Taylor opened his car door, Baker took off running.  Baker ran for approximately two blocks before hiding in bushes.  What happened next is disputed by the parties and is the basis of Baker's complaint.

According to Baker, when Officer Taylor discovered where he was hiding, Baker stood out from the bushes with his arms straight up to indicate that he had surrendered.  Officer Taylor then hit Baker in the left side of his head with his asp (i.e., baton), knocking Baker down and opening a wound that eventually required stitches.  When Baker asked why Officer Taylor had struck him, Officer Taylor responded by striking Baker across the knees and yelling "[t]hat's for running from me."  Officer Taylor then subdued Baker, handcuffed him, placed him under arrest, and escorted Baker to the hospital. Officer Taylor discovered a crack pipe and three crack rocks on Baker. Baker later pled guilty to possession of cocaine, possession of drug paraphernalia, obstruction of official business, and resisting arrest in connection with this incident.

---

[2]In their complaint, plaintiffs also alleged that the City of Hamilton maintained a policy, practice, or custom of deliberate indifference to Officer Taylor's alleged repeated use of excessive force. The district court dismissed this claim, concluding that "Baker and Snader have not presented evidence to substantiate their claim of a pattern or practice of ineffective training on the part of the City." Plaintiffs did not address this claim in their appellate brief and therefore have abandoned their claims against the City of Hamilton. *Renkel v. United States*, 456 F.3d 640, 642 n.1 (6th Cir. 2006).

B.

On October 23, 2003, at 3:30 a.m., seventeen-year-old Jesse Snader was visiting his friend's house in Hamilton, Ohio. While he and two other companions waited to receive permission to spend the night at the friend's home, the group walked around the block. At approximately 3:50 a.m., Hamilton City Police Officer Schuster, on patrol, spotted the group crossing the street in an area where several cars had recently been broken into. Officer Schuster stopped the group, told them that they had been stopped because of the recent break-ins, asked each person for identification, and inquired why Snader and his friends were out at that late hour.

Neither Snader nor his companions were able to provide Officer Schuster with any identification. Officer Schuster patted down each individual, finding no weapons, drugs, or evidence of criminal behavior. Officer Schuster then asked for Snader's name; Snader provided the false[3] name "Tom Bellamy" and gave a false birth date so that he would appear to be eighteen years old. As Officer Schuster was taking down each person's name, a second officer – later identified as Officer Alatore – appeared and performed another pat-down. After Officer Schuster took each person's name, he escorted Snader's two companions to the back seat of the police cruiser. Snader then ran away from the cruiser and Officers Schuster and Alatore. Officer Schuster gave chase.

After Snader ran two streets away from the cruiser, he believed that he had lost Officer Schuster and began walking. Snader then spotted several police officers, including Officer Taylor. Officer Taylor and his partner, Officer Kiep, had received word through radio traffic that Officer Schuster was chasing a fleeing suspect who had been stopped and questioned about possible break-ins. After spotting the officers, Snader started to run again and the officers, including Officer Eric Taylor, gave chase. After Officer Taylor yelled "Stop or I'll shoot," Snader responded by slowing down and screamed "I'm stopping[,] I'm stopping." According to Snader, Officer Taylor then hit Snader on the back of his head with his asp, tackled him, and sat on his back, keeping Snader still with a choke hold. Other unidentified officers then caught up and began hitting Snader in his legs with their batons. Snader was then handcuffed and taken to the hospital, and later transported to the Juvenile Detention Center where he was detained for ten days.

In connection with these incidents, Baker and Snader filed a complaint against Officer Taylor and the City of Hamilton in federal court on December 12, 2003. Baker and Snader allege that Officer Taylor used excessive force in conducting their respective arrests, in violation of their Fourth and Fourteenth Amendment rights, and is liable for assault and battery under Ohio law. On October 5, 2005, the district court granted defendants' motion for summary judgment, dismissing all of plaintiffs' claims.

This timely appeal followed.

II.

This court reviews de novo the district court's entry of summary judgment. *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 660 (6th Cir. 2005). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In deciding a motion for summary judgment, "the court must view the evidence and draw all reasonable inferences in favor of the non-moving party." *Brainard*,

---

[3] Because Snader was seventeen years old at the time of the incident, he was in violation of Hamilton's curfew for minors. Snader was later convicted of violating the curfew in connection with this incident.

432 F.3d at 661 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.

Defendants argue that, as a matter of law, Officer Taylor did not use excessive force in arresting Baker and Snader. Defendants argue further that, assuming *arguendo* that Officer Taylor did use excessive force, he is protected from liability by qualified immunity because his actions arose in the course of performing his official duties.

#### A. Qualified Immunity

"Through the use of qualified immunity, the law shields 'governmental officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). The Supreme Court instructs lower courts to perform a two-tiered inquiry to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts should first determine whether "the facts alleged show the officer's conduct violated a constitutional right." *Id.* If the plaintiff establishes that a constitutional violation occurred, a court must next consider "whether the right was clearly established." *Id.* When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

The Court has emphasized that the qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. Thus, in the excessive force context, it is not enough that a plaintiff establishes that the defendant's use of force was excessive under the Fourth Amendment; to defeat qualified immunity, the plaintiff must show that the defendant had notice that the manner in which the force was used had been previously proscribed:

> [T]here is no doubt that [precedent] clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough. Rather, we emphasized in *Anderson* [*v. Creighton*,] "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." 483 U.S. 635, 640 (1987). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (quoting *Saucier*, 533 U.S. at 201-02).

"In inquiring whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004) (quoting *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002)), *cert. denied sub nom. Dickhaus v. Champion*, 544 U.S. 975 (2005).

#### B. Excessive Force

As *Saucier* and *Brosseau* instruct, we must first determine whether Officer Taylor violated Snader's or Baker's constitutional rights when arresting them. It is well-established that individuals

have a constitutional right to be free from excessive force during an arrest. *See, e.g., Graham v. Conner*, 490 U.S. 386, 388 (1989); *Solomon*, 389 F.3d at 173. A claim of excessive force in the context of "an arrest, investigatory stop, or other 'seizure'" is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Conner*, 490 U.S. 386, 388 (1989).[4] "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. In considering whether a police officer acted reasonably while performing an arrest, the court must pay "careful attention to the facts and circumstances of each particular case," *id.* at 396, and "consider the difficulties of modern police work," *Smith v. Freland*, 954 F.2d 343, 346 (6th Cir. 1992).

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Id.* at 346-47 (quoting *Graham*, 490 U.S. at 396-97).

The Court has identified three factors that lower courts should consider in determining the reasonableness of force used: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the police officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Graham*, 490 U.S. at 396; *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006). These factors are not an exhaustive list, as the ultimate inquiry is "whether the totality of the circumstances justifies a particular sort of seizure." *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Graham*, 490 U.S. at 396).

### C. Analysis Applied to Baker and Snader

#### 1. Troy Baker

Viewing the record in the light most favorable to Troy Baker, we hold that he has set forth facts sufficient to establish a genuine issue of material fact as to whether Officer Taylor used excessive force in arresting him on December 15, 2002. Baker alleges that when Officer Taylor followed him to the bushes, he came out from behind the bushes with his hands straight up in the "surrender" position. At this point, according to Baker, Officer Taylor struck Baker in the head with his asp, knocking Baker to the ground. Officer Taylor then struck Baker in the knee, yelling "[t]hat's for running from me."

Because Baker had surrendered before being struck, a reasonable jury could conclude that Officer Taylor's strike to Baker's head was unjustified and excessive. By raising his hands in the surrender position, Baker arguably showed that he was unarmed, was compliant, and was not a significant threat to Officer Taylor's safety. A reasonable factfinder could therefore find that Officer Taylor's strike to Baker's head was unwarranted and unreasonably severe. Moreover, a jury could find that Officer Taylor acted unreasonably in striking Baker's knee after Baker had fallen to the ground. We have held repeatedly that the use of force after a suspect has been incapacitated or

---

[4] Although plaintiffs allege that Officer Taylor violated both their Fourth and Fourteenth Amendment rights to be free from excessive force, we apply a Fourth Amendment analysis to their claims, as the allegations stem from force used during the course of an arrest. *See Ciminillo v. Streicher*, 434 F.3d 461, 465-66 (6th Cir. 2006) (applying a Fourth Amendment, rather than Fourteenth Amendment, analysis where plaintiff was "seized" by police during riot).

neutralized is excessive as a matter of law. *See, e.g., Shreve v. Jessamine Cty. Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006); *Champion*, 380 F.3d at 902 (citing cases); *see also Phelps v. McCoy*, 286 F.3d 295, 301 (6th Cir. 2002) ("[T]here was simply no governmental interest in continuing to beat [plaintiff] after he had been neutralized, nor could a reasonable officer have thought there was."). At the time he was struck in the knee, Baker had surrendered and had been neutralized by Officer Taylor; the strike to Baker's knee was unjustified and gratuitous. Furthermore, Officer's Taylor alleged statement after striking Baker's knee – "[t]hat's for running from me" – shows that the purpose of this hit was not to subdue Baker, but rather to punish him. *See Pigram v. Chaudoin*, No. 06-0378, 2006 U.S. App. LEXIS 25073, at *10 (6th Cir. Oct. 5, 2006) (unpublished) (noting that officer's slap to plaintiff "cannot reasonably be construed as a means of subduing Pigram" where the officer's stated justification for the slap was because the plaintiff had a "smart-ass mouth").

That Baker was not handcuffed at the time he was struck does not preclude a finding of unreasonableness. *See Tapp v. Banks*, 1 F. App'x 344, 350 (6th Cir. 2001) (unpublished) ("[I]t is not objectively reasonable for an officer dealing with an essentially compliant person, to strike the person's legs twelve to fifteen times in the absence of resistance."). Moreover, that Baker received one strike to the head and one to the knee from Officer Taylor's asp – in comparison to the numerous punches and head slams at issue in *Phelps* or the repeated strikes to the leg in *Tapp* – does not necessarily render Officer Taylor's behavior reasonable. *See Pigram*, 2006 U.S. App. LEXIS 25073, at *9 (holding that a single slap, administered after the plaintiff had been subdued, under specific circumstances, may constitute a Fourth Amendment violation). Finally, that Baker had attempted to evade arrest does not preclude his claim of excessive force against Officer Taylor or render Officer Taylor's use of his asp reasonable. *See Shreve*, 453 F.3d at 687 (holding that strikes to plaintiff's back and knee are unreasonable where plaintiff was already incapacitated, despite plaintiff's prior attempt to avoid detection by police). A jury could therefore find that Officer Taylor acted unreasonably in striking Baker's head and knee and used excessive force in violation of Baker's Fourth Amendment rights during the arrest on December 15, 2002.[5]

The next inquiry is whether Baker's right to be free from such strikes was "clearly established" at the time of the incident. We conclude it was. We have noted recently that "[c]ases in this circuit clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest." *Shreve*, 453 F.3d at 688 (citing cases). Although *Shreve* post-dated Baker's arrest by four years, there was ample case law in this circuit to give notice to Officer Taylor that Baker had a constitutional right to be free from gratuitous strikes to the head and knee. For example, *Phelps* – which held that a police officer has no governmental interest in repeatedly striking a criminal defendant after the defendant has been neutralized – was released on April 10, 2002, eight months before Baker's arrest. *Phelps*, 286 F.3d at 301-02. In *Adams v. Metiva*, 31 F.3d 375 (6th Cir. 1994), we likewise held that the use of force on a suspect after he had been incapacitated by mace is excessive force as a matter of law. *Id.* at 386; *see also McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) ("[O]ur court has repeatedly found that a totally gratuitous blow with a policeman's nightstick may cross the constitutional line. . . ."). Because there was significant Sixth Circuit case law support for Baker's right to be free from gratuitous strikes to his body, qualified immunity is not an available defense for Officer Taylor.

---

[5]In support of his Fourth Amendment claim and in opposition to defendants' motion for summary judgment, Baker offered his hospital records, an affidavit by a witness who claims to have observed Officer Taylor strike Baker, and three affidavits by individuals who claimed to have been hit by Officer Taylor with his baton or asp. In its Opinion and Order, the district court did not indicate whether it had considered these materials. On appeal, defendants argue that the witness's affidavit should be disregarded because it contradicts Baker's depiction of the arrest. Defendants argue further that the other affidavits are inadmissible "other acts" evidence under Federal Rule of Evidence 404(b). We need not consider these arguments, however, because Baker's complaint and deposition testimony is sufficient to establish a genuine issue of material fact. *See Shreve*, 453 F.3d at 687-88 (finding deposition testimony, although inconsistent, sufficient to defeat defendants' motion for summary judgment). We therefore express no opinion as to the admissibility of this evidence offered by plaintiffs.

2. Jesse Snader

Viewing the facts in a light most favorable to the non-moving party, Jesse Snader was surrendering at the time that Officer Taylor struck him with his baton. In light of this action, he has alleged facts sufficient to establish a genuine issue of material fact as to whether Officer Taylor used excessive force in arresting him on October 23, 2003. Snader claims that Officer Taylor struck him on the back of his head while chasing Snader, after Snader had announced that he was slowing down. After striking Snader, Officer Taylor allegedly tackled him and sat on Snader's back with a choke hold, while other officers caught up and subsequently struck Taylor in his legs.

Defendants argue that Snader had not surrendered at the time that he was struck by Officer Taylor because, although he announced that he was stopping, he had yet to come to a complete stop. We disagree. We find it particularly important that in this case, Snader allegedly yelled "I'm stopping!" in response to Officer Taylor's instruction that he would shoot Snader if he did not stop. Snader's alleged response shows that he was compliant with Officer Taylor's order and in the act of surrendering when struck by Officer Taylor. A jury could therefore find that Officer Taylor's use of his asp was unjustified and gratuitous.

We also find it significant that Officer Taylor struck Snader on the head. We have noted repeatedly that a blow to an individual's head may constitute excessive force, *see, e.g., Bultema v. Benzie County*, 146 F. App'x 28, 36 (6th Cir. 2005) (unpublished); *Phelps*, 286 F.3d at 302; *Davis v. Bergeron*, No. 98-3812, 1999 U.S. App. LEXIS 17984, at *12-13 (6th Cir. July 27, 1999) (unpublished), and in the circumstances alleged by Snader, Officer Taylor's strike to such a sensitive and vitally important part of Snader's body was objectively unreasonable. Even if we were to agree with defendants that Officer Taylor's use of his asp was necessary to subdue Snader – and we do not – Officer Taylor could have struck Snader in another, less sensitive part of Snader's body.[6]

Because a jury could find that Snader was surrendering at the time he was struck in the head, we likewise conclude that Officer Taylor's use of his asp was gratuitous. As we discussed above, Snader's right to be free from a gratuitous strike to the head was clearly established at the time of this incident. *See, e.g., Phelps*, 286 F.3d at 301-02; *McDowell*, 863 F.2d at 1307. Officer Taylor, therefore, may not avail himself of qualified immunity for the Snader incident.

IV.

Baker and Snader also allege that Officer Taylor is liable for assault and battery under Ohio law. The district court granted summary judgment to defendants with respect to plaintiffs' state law claims, finding that "Taylor and the other officers' actions were reasonable in light of the circumstances and as such privileged."

> "If an officer uses more force than is necessary to make an arrest and protect himself from injury, he is liable for assault and battery . . . ." *City of Cincinnati v. Nelson*, No. C-74321, 1975 Ohio App. LEXIS 7443, *5 (May 5, 1975); *see also Schweder v. Baratko*, 103 Ohio App. 399, 403, 143 N.E.2d 486 (1957) ("Force when used lawfully in making an arrest is in the exercise of a government function, and only in cases where excessive force is used, that is, force going clearly beyond that which

---

[6]Hamilton Police Division General Order RR-1.3 also suggests that Officer Taylor's strike to Snader's head was excessive and in contravention of police policy. Order RR-1.3 provides in pertinent part:

> The baton will be used for the purposes of restraining unruly prisoners or subduing assailants by striking them on such sensitive areas as ankles, knees, shins, hands, wrists, elbows, structural areas or other sensitive areas. The use of a baton above the shoulder should be made only in cases of extreme physical danger to the officer or others.

is reasonably necessary to make the arrest, can such force be claimed an assault and battery by the person arrested."). *An officer, acting in his official capacity, is immune from liability for injury unless his actions were "manifestly outside the scope" of his responsibilities, or the officer acted "with malicious purpose, in bad faith, or in a wanton or reckless manner."* OHIO REV. CODE § 2744.03(A)(6).

*D'Agastino v. City of Warren*, 75 F. App'x 990, 995 (6th Cir. 2003) (unpublished) (emphasis added). Plaintiffs do not contend that Officer Taylor was acting outside the scope of his employment when arresting Baker and Snader, but rather argue that immunity is not available to Officer Taylor because he acted with malicious purpose, in bad faith, or recklessly in arresting them.

We reverse the district court's order granting defendants summary judgment on Baker's and Snader's state law claims. As discussed above, both Baker and Snader have put forward evidence that Officer Taylor struck Baker gratuitously while arresting them. This evidence is sufficient to establish a genuine issue of material fact as to whether Officer Taylor acted maliciously or in bad faith in striking and arresting them.

Finally, plaintiffs also argue that punitive damages should be available in this case. As defendants note properly, because the district court granted defendants' motion for summary judgment, it did not reach the issue of punitive damages. The issue of punitive damages is therefore not properly before this court, and we do not rule on this issue.

V.

For the reasons stated above, we reverse the district court's entry of summary judgment in favor of defendant Taylor with respect to plaintiffs' Fourth Amendment claims of excessive force and plaintiffs' claims for assault and battery arising under Ohio law, and remand for further proceedings. We affirm the grant of summary judgment in favor of defendant City of Hamilton.