NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0030n.06

No. 09-5416

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jan 19, 2010**
LEONARD GREEN, Clerk

TAWANA WILSON,                           )
                                         )
    Plaintiff-Appellee,                  )    **ON APPEAL** FROM THE
                                         )    UNITED STATES DISTRICT
v.                                       )    COURT FOR THE MIDDLE
                                         )    DISTRICT OF TENNESSEE
BOYCE WILKINS,                           )
                                         )
    Defendant-Appellant,                 )    **O P I N I O N**
                                         )
    and                                  )
                                         )
METROPOLITAN GOVERNMENT                  )
OF NASHVILLE AND DAVIDSON                )
COUNTY, TENNESSEE,                       )
                                         )
    Defendant.                           )
_____  )

Before:  KENNEDY, MOORE, and WHITE, Circuit Judges.

**WHITE, Circuit Judge**.  In this suit brought under 42 U.S.C. § 1983, Defendant Boyce

Wilkins (Wilkins), a police officer with former-Defendant Metropolitan Nashville Police

Department (MNPD), appeals the district court's denial of his motion for summary judgment

brought on qualified immunity grounds.[1]  We affirm.

_____

[1]This court has jurisdiction over a district court's denial of a claim of qualified immunity
provided it presents a pure issue of law; it is then regarded as an appealable final decision within the
meaning of 28 U.S.C. § 1291. *Johnson v. Jones*, 515 U.S. 304, 313, 317 (1995); *Morrison v. Board
of Trustees of Green Tp.*, 583 F.3d 394, 399 (6th Cir. 2009).

**I**.

Plaintiff Tawana Wilson (Wilson) called the MNPD on December 24, 2006, after she and her husband, Timothy Wilson, had a domestic dispute. The MNPD declined to intervene. On December 28, 2006, Wilson again called the MNPD and reported that her husband had grabbed her around the neck and shoved her against a wall. Two male MNPD officers, Wade and Smith, responded. Wilson told them that she just wanted her husband to leave, to give her some "space." Shortly after, Defendant Officer Wilkins arrived. Officer Wilkins repeatedly urged Wilson to have her husband arrested. Wilson told Officer Wilkins that she did not want her husband arrested, but Officer Wilkins persisted, and Wilson eventually agreed.

Officer Smith informed Wilson that her husband would be taken "downtown" to appear at night court. Wilson wanted to drive her own vehicle, but Officer Wilkins insisted that she ride with him, and asked that she sit in the front seat. She did so. Because Wilson had lived in the area for most of her life, she knew the three quickest routes to get downtown. Officer Wilkins passed the shortest route downtown, and then passed the second route. During the drive, Officer Wilkins rubbed and caressed Wilson's hand three times, looked at her seductively, told her she was beautiful, and said he wanted to date her. The first time Officer Wilkins caressed Wilson's hand, Wilson thought he was just being sympathetic, because she had cried in response to his inquiring what had happened with her husband. The second and third touchings occurred after Wilson had stopped crying, and Wilson considered them offensive and became scared.

After passing the two most direct routes downtown, Wilkins continued driving north, away from downtown. Although there was a third route available (I-65) in the direction Wilkins was

driving, Wilson did not think Wilkins would drive that far north just to go downtown. Wilson did not believe Wilkins was taking her to the police station and, at a point when the police vehicle slowed, she unbuckled her seat belt and opened the passenger door. Officer Wilkins grabbed her sleeve, but Wilson was able to jump out of the police vehicle and run toward a motel, screaming.

After Wilson jumped from Wilkins's police vehicle and screamed at passers-by for help, Wilkins called for backup, requesting a female officer. Officer Angela Booker, whom Wilson knew, responded to the scene, and Wilson told her something to the effect that Officer Wilkins was trying to rape her.

Wilson brought suit in Tennessee circuit court asserting claims under 42 U.S.C. § 1983, alleging Officer Wilkins's conduct violated the Fourth and Fourteenth Amendments, as well as state statutory claims of assault and official misconduct and common law assault and battery.[2] Wilson alleged that because of the incident, one of her vocal chords was damaged, did not respond to treatment and would require corrective surgery. Defendants removed the case to the United States District Court.

**A**

Officer Wilkins moved for summary judgment, asserting *inter alia* that Wilson failed to state a claim under the Fourth Amendment because she was not "seized," and that she failed to state a claim under the Fourteenth Amendment because his conduct would not "shock the conscience" for purposes of the Fourteenth Amendment. Wilkins also asserted that even if a constitutional violation

---

[2]Wilkins does not appeal the denial of summary judgment as to Wilson's state law claims.

3

occurred, he is entitled to qualified immunity because there was no clearly established right at the

time of the incident that would have informed him that he was violating the Constitution.

The district court denied Wilkins's motion. It analyzed Wilson's claims under the Fourth

Amendment, found that a reasonable jury could conclude that Wilson had been "seized," indicated

that the clearly established right violated was Wilson's constitutional right not to have her physical

freedom impinged by a state actor, and found that Wilkins's actions were not objectively reasonable:

> * * * even assuming that Plaintiff "voluntarily" entered Officer Wilkins' patrol car, a reasonable jury could readily conclude that she was seized. Construed in her favor, the facts show that once Plaintiff was in the vehicle, she was captive in a moving police vehicle. While being so held, Officer Wilkins chose not to drive directly downtown, but chose instead to make untoward comments and to touch the Plaintiff in an offensive manner.

> The Court also rejects Officer Wilkins' suggestion that the rights allegedly violated were not clearly established. Mendenhall[3] was decided in 1980 and Graham[4] was decided in 1989. Moreover, in the landmark decision of Terry v. Ohio, 392 U.S. 1, 16 (1968) decided in 1968, the Supreme Court held that "[w]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."

> Moreover, Officer Wilkins' actions were not objectively reasonable. Having insisted that Plaintiff ride with him, Officer Wilkins should have merely driven Plaintiff, a victim of a crime, downtown. He should not have detoured and made untoward advances.

## II.

Qualified immunity is generally available for "government officials performing discretionary

functions . . . insofar as their conduct does not violate clearly established statutory or constitutional

---

[3]*United States v. Mendenhall*, 446 U.S. 544 (1980).

[4]*Graham v. Connor*, 490 U.S. 386 (1989).

rights of which a reasonable person would have known." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008). The plaintiff bears the ultimate burden of demonstrating that the defendant is not entitled to qualified immunity. *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006). The district court must consider the undisputed evidence produced as a result of discovery, viewed in the light most favorable to the non-moving party. *Poe v. Hayden*, 853 F.2d 418, 425 (6th Cir. 1998). A court required to rule on the qualified immunity issue must consider whether the facts alleged show the officer's conduct violated a constitutional right and whether that constitutional right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 129 S. Ct. 808 (2009). "The judges of the district courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 818. This court reviews the district court's denial of qualified immunity de novo. *Carver v. City of Cincinnati*, 474 F.3d 283, 285 (6th Cir. 2007).

A constitutional right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "The contours of the [constitutional] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ciminillo v. Streicher*, 434 F.3d 461, 468 (6th Cir. 2006) (internal quotation marks omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[O]fficials can still be on notice that their conduct violates established law [even] in novel factual circumstances." *Safford Unified Sch. Dist. v. Redding*, 129

S. Ct. 2633, 2643 (2009) (internal quotation marks omitted).  "In determining whether a reasonable

officer would have known that his conduct was unlawful, this Court looks first to the precedents of

the Supreme Court, then to case law from this circuit, and finally to decisions from other circuits."

*Humphrey v. Mabry*, 482 F.3d 840, 852 (6th Cir. 2007).

**A**

We agree with the district court that Wilson's claims are properly analyzed under the Fourth,

rather than Fourteenth, Amendment.  The district court correctly noted in this regard:

> Plaintiff sues for both Fourth and Fourteenth Amendment violations pursuant to 42 U.S.C. 1983.  However, where a plaintiff complains of an "unreasonable search and seizure," the claim is more properly analyzed under the Fourth Amendment than the substantive due process provision of the Fourteenth Amendment, since the former is a "more explicit textual source of constitutional protection." Graham v. Connor, 490 U.S. 386, 395 (1989).  Given the explicit protections afforded by the Fourth Amendment, a plaintiff cannot "also proceed with a claim under the 'more generalized notion of substantive due process.'" Wilson v. Collins, 517 F.3d 421, 428 (6th Cir. 2008) (citing, Graham, 490 U.S. at 395); see United States v. Lanier, 520 U.S. 259, 272 [n.7] (1996) ("Graham simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"). . . . [5]

**B**

---

[5]*See also Phelps v. Coy*, 286 F.3d 295, 299-300 (6th Cir. 2002) ("Which amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between. . . . If the plaintiff was a free person . . .  and the use of force occurred in the course of an arrest or other seizure . . . [then] the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard. . . . [I]f a plaintiff is not in a situation where his rights are governed by the particular provisions of the Fourth or Eighth Amendments, the more generally applicable due process clause of the Fourteenth Amendment still provides the individual some protection against physical abuse by officials."  Internal citations omitted.)

Next, we must determine whether Wilson alleged sufficient facts and produced evidence to demonstrate a "seizure" under the Fourth Amendment and, if so, whether any such seizure could be considered constitutionally unreasonable. *See Slusher*, 540 F.3d at 454. We review *de novo* the district court's holding that Wilkins's touchings and remarks of a sexual nature to Wilson while she was in a moving vehicle under Wilkins's control, during a ride he extended by taking a circuitous route to police headquarters, constituted a "show of authority." *See Graham v. Connor*, 490 U.S. 386 (1989). The circumstances that led Wilson to ride with Officer Wilkins were that Wilkins repeatedly urged Wilson to have her husband arrested. Although Wilson told Officer Wilkins that she did not want her husband arrested, Wilkins persisted, and Wilson eventually agreed. Wilson wanted to drive her own vehicle downtown, where her husband was being taken, but Officer Wilkins insisted that she ride with him, and asked that she sit in the front seat. Once captive in Wilkins's moving police vehicle, Wilkins touched and caressed Wilson's hand several times, and told her he wanted to date her.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. CONST. amend. IV. "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, in some way restrained the liberty of a citizen." *Slusher*, 540 F.3d at 454 (*quoting Graham*, 490 U.S. at 395 n.10); *see also Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.").

7

> [A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (citations and footnote omitted) . On the

other hand, "not every governmental interference with an individual's freedom of movement raises

such constitutional concerns that there is a seizure of the person." *Skinner v. Ry. Labor Executives'*

*Ass'n*, 489 U.S. 602, 618 (1989).

## C

Analyzing the incident in temporal segments,[6] Wilkins asserts that the district court erred in

holding that he seized Wilson during what he classifies as the third time segment – when he touched

her hand and made untoward comments to her. We disagree.

We review *de novo* the district court's holding that a seizure occurred. *United States v.*

*Buchanon*, 72 F.3d 1217, 1223 (6th Cir. 1995). Whether a seizure occurred depends on the

circumstances. *Mendenhall*, 446 U.S. at 554. We reject Wilkins' characterization of the district

court's conclusion that a seizure occurred as resting only on the touchings and concomitant

---

[6]Wilkins splits the incident into three segments, the first being Wilson's voluntarily sitting in the front seat of Wilkins's patrol car to be transported to police headquarters. He asserts no seizure occurred, as there was no evidence that Wilson was under arrest, handcuffed, or locked in the back of the patrol car. Wilkins isolates a second segment, contending that he did not seize Wilson when he failed to travel by what she believed to be the best route to police headquarters. In any event, whether analyzed in time segments or more broadly, we still arrive at the conclusion that Wilson's allegations support that she was seized.

comments. The court's opinion noted that a physical touching is a circumstance that might indicate

a seizure, and that in *Slusher*[7] this court concluded that the plaintiff had been seized when a police

officer grabbed her hand. Beyond that, we think it clear that the district court's determination that

---

[7]Among the cases the district court relied on was *Slusher*, 540 F.3d 449.  In *Slusher*, two deputies were at the Slushers' property to recover equipment that had been hidden on the property. The deputies allowed the plaintiff, Linda Slusher, to review their court order.  When the deputies asked Slusher to hand over the court order, she said she had not finished reading it.  One of the deputies said she had had sufficient time and directed her to hand it over to him.  The deputy reached for the order, Slusher retracted her hand holding the order and asked if she could make a copy of it inside her house.  The deputy again attempted to retrieve the order and in the process pulled Slusher's arm down with one hand and used his other hand to grab her right hand.  Slusher claimed she was injured as a result, and brought suit under 42 U.S.C. § 1983, alleging a Fourth Amendment violation due to excessive force.  The defendant deputies moved for summary judgment, claiming entitlement to qualified immunity.  The district court granted the defendants summary judgment, analyzing Slusher's claim under the Fourteenth Amendment and concluding there was no constitutional violation.  540 F.3d at 458 (Ryan, J., concurring).

This court concluded that Slusher had articulated sufficient facts that would allow a jury to conclude she was "seized" when she was physically grabbed by one of the deputies:
> [A]t a minimum, Slusher's liberty was restrained when Deputy Carson grabbed her right hand as she certainly was not "at liberty to ignore the police presence and go about [her] business." *Kaupp v. Texas*, 538 U.S. 626, 629, 123 S. Ct. 1843, 155 L. Ed. 2d 814 (2003) (concluding that a seizure takes place for purposes of the Fourth Amendment when "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " (quoting *Florida v. Bostick*, 501 U.S. 429, 437, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991)); *see also Hodari D.*, 499 U.S. at 625, 111 S. Ct. 1547 ("[A]n arrest is effected by the slightest application of physical force.") . . . .

*Slusher*, 540 F.3d at 454-55.  This court affirmed the grant of summary judgment on the ground that the seizure was not unreasonable:  "once Slusher became agitated and pulled the order away from [deputy] Carson, it was reasonable for the officers to conclude that a brief show of force might be necessary to ensure she complied with their orders." *Id.* at 456.  This court also concluded that Slusher had not alleged facts that supported a finding that the officers used more force than was necessary. *Id.*

a seizure occurred was a contextual one – Wilson's being "captive" in a "moving police vehicle" which was under Wilkins's control. Wilkins asserts that even if this court finds that he seized Wilson, there was no clearly established law that would have told him that his conduct under these circumstances – however inappropriate it may have been – violated the Fourth Amendment.

**D**

The district court noted that *Mendenhall* was decided in 1980 and *Graham* in 1989. Under *Mendenhall*, a seizure occurs when "in view of all the circumstances surrounding the incident, a reasonable person would have believed that [s]he was not free to leave." 446 U.S. at 554. Under *Graham*, a seizure triggering the Fourth Amendment's protections occurs when a government actor in some way restrained the liberty of a citizen by means of physical force or show of authority. 490 U.S. at 395 n.10.

Under the cases the district court relied on, the right of Wilson's infringed – to be free from having her liberty impinged by a state actor exerting authority over her – was clearly established in December 2006 when this incident occurred. When considering whether qualified immunity applies, "[p]re-existing law need not address the very question at hand; rather, '[t]he contours of the right must be sufficiently clear.'" *Logsdon v. Hains*, 492 F.3d 334, 343 (6th Cir. 2007) (*quoting Center for Bio-Ethical Reform v. City of Springboro*, 477 F.3d 807, 830 (6th Cir. 2007).

The remaining question is whether Wilson alleged sufficient facts and supported the allegations by sufficient evidence to indicate that what Wilkins allegedly did was objectively unreasonable in light of the clearly established constitutional right. *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996). The district court concluded that Wilkins's actions were "not

objectively reasonable. Having insisted that Plaintiff ride with him, Officer Wilkins should have merely driven Plaintiff, a victim of a crime, downtown. He should not have detoured and made untoward advances." Viewing the facts in a light most favorable to plaintiff, we agree. A reasonable officer would have known that he was not free to make sexual overtures and repeatedly touch a citizen in his control in a moving vehicle.

     AFFIRMED.