GRIFFIN, Circuit Judge,
dissenting..
This suit under 42 U.S.C. § 1983 arises from the fatal shooting of Danny Withers by Detective Daniel Zola of the Cleveland Police Department. Zola moved for summary judgment on the basis of qualified immunity, which the district court granted, finding that Zola’s actions were objectively reasonable under the circumstances. Having found no underlying constitutional violation by Zola, the district court also granted the City of Cleveland’s motion to dismiss plaintiffs’ municipal liability claims. Plaintiffs appeal both decisions. I would affirm and therefore respectfully dissent.
I.
On September 30, 2010, Cleveland police executed an arrest warrant for Danny Withers stemming from an armed bank robbery during which he allegedly threatened to “blow [the teller’s] head off,” The group of officers'who executed the warrant included Sergeant Thomas Shoulders and *423 Detectives David Shapiro and Daniel Zola. They visited Withers’ grandmother’s house, where police suspected he lived. When they arrived, they saw a man in an upstairs window and asked if “Kevin” was there. After the person responded that no one by that name lived there, Shapiro shouted, “Danny, it’s the police.” The man then disappeared from the window, and the police resumed knocking on the door. Withers’ grandmother eventually answered the door and told the officers that Danny Withers lived there. Thereafter, the police entered the house and began searching for Withers, all the while calling Withers’ name and instructing him to come out. Police cleared the upper floors, leaving the basement for last. Once backup arrived to secure the perimeter, the three officers proceeded to check the basement.
The basement was not well lit. It had only one light at the foot of the stairs, requiring the offlcers to use their flashlights for illumination. They continued to call out for Withers and instructed him to come out, but he did not respond. The officers identified what looked like a closet, and Shoulders moved into position next to the door to open it. Zola stood in front of the door, slightly off to one side, about 6 feet away, with his flashlight fixed on the door and his gun drawn. Shoulders opened the door “quickly.” Once the door opened, Zola saw the silhouette of a person and “on the right side of his body an arm flew up real fast.” Zola fired a single shot, hitting the person in the chest. Police secured the person, whom they identified as Danny Withers, and called EMS.
Later, the police found a screwdriver lying near Withers. Also, as police gathered outside the house after the shooting, an individual named Dennis Daniel allegedly overheard an unidentified officer say, “we said ‘get down fucker, get down, fucker’ and then he shot.”
Danny Withers later died at the hospital.
Withers’ parents filed suit on behalf of themselves and his estate, claiming violations of Withers’ federal civil rights under 42 U.S.C. § 1983. The only claims at issue in this appeal are plaintiffs’ Fourth Amendment claim of excessive force against Zola and their municipal liability claims against the City of Cleveland arising out of Zola’s alleged constitutional violation.[1]
Zola filed a motion for summary judgment based on qualified immunity. Plaintiffs contested the motion, arguing that genuine issues of material fact existed and that additional discovery was needed. The district court allowed limited discovery on plaintiffs’ excessive force claim, which included depositions of Zola, Shapiro, and Shoulders. Following additional briefing by the parties, the district court granted Zola’s motion, ruling that there were no genuine issues of material fact and that the undisputed facts established that Zola’s actions were objectively reasonable. In addition, the district court dismissed plaintiffs’ claims against the City of Cleveland because, “[hjaving found no [underlying] constitutional violation ..., it is axiomatic that there can be no municipal liability for the lawful conduct of the officers.”
Plaintiffs timely appeal the decisions.
*424 II.
Our standard of review is well established:
This court reviews de novo the district court’s entry of summary judgment. Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. A genuine issue for trial exists only when there is sufficient evidence on which the jury could reasonably find for the plaintiff. In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable . inferences in favor of the non-moving party.
Baker v. City of Hamilton, Ohio, 471 F.3d 601, 605 (6th Cir.2006) (citations and quotation marks omitted). At the summary judgment stage, “[i]f all material facts are undisputed, the reasonableness of officer conduct in an excessive-force claim is a question of law,” which this court’ reviews de novo. Stricker v. Twp. of Cambridge, 710 F.3d 350, 364 (6th Cir.2013) (citing Scott v. Harris; 550 U.S. 372, 381 n. 8, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).
This is an action for civil damages under 42 U.S.C. § 1983 for violation of Withers’ constitutional rights. The doctrine of qualified immunity shields governmental officials like Detective Zola from civil liability as long as “their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Chappell v. City of Cleveland, 585 F.3d 901, 907 (6th Cir.2009). When a defendant invokes qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to the defense. Bletz v. Gribble, 641 F.3d 743, 750 (6th Cir.2011).
To determine whether a defendant is entitled to qualified immunity, the Supreme Court instructs lower courts to perform a two-part inquiry. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Courts should examine whether “the facts alleged show the officer’s conduct violated a constitutional right” and “whether the right was clearly established.” Id. We may exercise our discretion and perform the inquiry in either order. Pearson, 555 U.S. at 236, 129 S.Ct. 808. However, a plaintiff must satisfy both parts of the inquiry in order to defeat the assertion of qualified immunity. Wesley v. Campbell, 779 F.3d 421, 429 (6th Cir.2015). In this case, the district court determined that no constitutional violation occurred and, thus, did not examine whether the constitutional right at issue was clearly established.
III.
Plaintiffs allege that Zola violated Withers’ Fourth Amendment right to be free from excessive force. We apply the Fourth Amendment’s “objective reasonableness” standard when analyzing claims that an officer used excessive force during the course of an arrest. Baker, 471 F.3d at 606. In the context of the use of deadly force, the reasonableness of an officer’s actions depends on whether “the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.” Livermore ex rel Rohm v. Lubelan, 476 F.3d 397, 404 (6th Cir.2007) (ellipsis omitted); see also id. (“[T]he Fourth Amendment prohibits a police officer’s use of deadly force to seize an unarmed, non-dangerous suspect.”) (quoting Sample v. Bailey, 409 F.3d 689, 696 (6th Cir.2005) (bracketing in original)). “The ‘reasonableness’ of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than *425 with the 20/20 vision of hindsight.” Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Our evaluation of reasonableness must also recognize the reality that “police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.” Id. at 396-97, 109 S.Ct. 1865.
The Supreme Court has identified three, nonexclusive factors for determining the reasonableness of force used: “(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the police officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight.” Baker, 471 F.3d at 606 (citing Graham, 490 U.S. at 396, 109 S.Ct. 1865); see also id. at 606-07 (“These factors are not an exhaustive list, as the ultimate inquiry is whether the totality of the circumstances justifies a particular sort of seizure.”) (quotation marks omitted). These considerations, particularly the second factor involving an immediate threat to officer safety, demonstrate that Zola’s decision to exercise force was objectively reasonable under all the circumstances of this case.
Here, the undisputed facts establish that at the time of the shooting Zola and the other officers were in a dark, unfamiliar basement searching for a fugitive suspected of armed bank robbery and who threatened to “blow [the teller’s] head off’ if she did not comply with his orders. Having already searched the rest of the house, the officers reasonably believed Withers may have been in the basement. By that time, the officers had repeatedly called for Withers to come out, to no avail. Under these circumstances, a reasonable officer would conclude that Withers was likely armed and lying in wait, posing a threat to officer safety. Once in the basement, the officers encountered an unlocked closet door. Detective Zola was in the “point-person” position, placing him in the line of fire in the event there was a person inside armed with a weapon. When Sergeant Shoulders opened the door, Zola could only see what was illuminated by his flashlight, which was a person’s silhouette. After the door opened, Zola also saw a person’s right arm come up quickly. In Zola’s words, “His arm came up real fast.... It was so fast you could not distinctively see what was in his hand or tell if he was going to shoot.” Presented with this sudden movement under these “tense, uncertain, and rapidly evolving” circumstances, and given Zola’s knowledge of Withers’ criminal history and resistance to arrest, a reasonable officer in Zola’s position would have made the split-second judgment that the person in the closet posed a threat of serious physical harm to himself and the other officers. Graham, 490 U.S. at 397, 109 S.Ct. 1865. Although we know now that Withers was unarmed, the clarity of hindsight does not obscure the fact that, under the circumstances existing at that time, when Withers quickly raised his arm, a reasonable officer would perceive a threat and use deadly force for his own protection. See id. at 396, 109 S.Ct. 1865 (instructing that “reasonableness” is “judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight”). Given the totality of the circumstances confronting Zola at that moment, his decision to fire his weapon, while tragic in hindsight, was objectively reasonable at the time he decided to exercise force.
In arguing to the contrary, plaintiffs rely primarily on Sample. In that case, the defendant officers responded to a reported break-in at a commercial building after hours. Sample, 409 F.3d at 691. When they arrived, they saw a person carrying a *426 computer, and when that person noticed the officers, he fled. Id. The officers searched the unlit building and came across a cabinet that smelled like alcohol. Id. at 692. Suspecting the person was inside, one of the officers, Officer Bailey, opened the door and saw the suspect hiding inside. Id. Both of the suspect’s hands were clearly visible and empty. Id. at 692, 697. As Officer Bailey ordered the plaintiff to come out with his hands up, the second officer, Officer Prexta, holstered his weapon and moved in to arrest the plaintiff. Id. at 692. At this point, according to the plaintiffs version of the facts (which the defendants and this court accepted for purposes of summary judgment), “he reached out with his right hand to grab the edge of the top of the cabinet to pull himself out, [at which point] he was shot several times [by Officer Bailey].” Id. at 693. In evaluating whether the defendant engaged in excessive force, this court concluded that “[Officer] Bailey was not faced with a serious threat of physical harm to himself or his partner which would necessitate the use of deadly force.” Id. at 697. This court held a reasonable officer would not have felt threatened by the plaintiffs hand movement because, by reaching out to grab the top of the cabinet, the plaintiff was simply complying with the officers’ instructions. Id. Moreover, his hands were visible and empty, he was not verbally threatening the officers, and he was curled up in a cabinet, unable to charge the officers. Id. Even considering the fact that the room was dark, the alarm was sounding, and the plaintiff was unresponsive, this court held that the surrounding circumstances did not justify the defendant’s use of deadly force. Id.
In the present case, plaintiffs draw a number of parallels to Sample, none of which hold up to scrutiny. The chief similarity, according to plaintiffs, is that, like in Sample, Withers was unarmed. However, the defendant officer in Sample knew that the suspect was unarmed; he had an extended period of time to observe the suspect’s hands; and he saw that the suspect was curled up without a weapon in his hands. See id. at 692, 697. On these facts, Sample held that a reasonable officer would not feel threatened by a suspect lying in a cabinet with nothing in his hands who reaches out in order to comply with the officer’s commands. But those are not the facts of this case. Here, Detective Zola did not know whether there was someone in the closet; he did not have an extended opportunity to see what, if anything, was in Withers’ hand before Withers made a movement; and he only saw the silhouette of a person standing and an arm raise up quickly toward him (“It was so fast you could not distinctively see what was in his hand or tell if he was going to shoot.”). Thus, unlike in Sample, Zola did not have the opportunity to confirm whether Withers was armed or unarmed. Even Sample itself recognized how critical this factual distinction is:
Our dicta.in Robinette [v. Barnes, 854 F.2d 909 (6th Cir.1988) ] recognized the inherent dangers facing police officers searching for a suspect who is hiding from them. In such a situation, officers have an unquestionable right to protect themselves from a possible ambush. Once a suspect has been found, however, and the police have weapons directed at him, as in this case, the inherent danger to the officers resulting from a hidden suspect in an enclosed, unfamiliar area at night is diminished.
Id. at 700. In addition, unlike in Sample, Zola had reason to believe Withers was potentially armed because he was suspected of committing an armed robbery. Based on these facts, I would hold that a reasonable officer would feel threatened by a person suspected of a violent crime *427 standing in a closet who moves their arm quickly toward the officer before the officer has a chance to observe whether the person was armed. The critical factual differences between this case and Sample would make such a holding entirely harmonious with Sample.
Plaintiffs further contend that, like in Sample, the officers had Withers surrounded and his hand gesture was arguably consistent with surrendering. Again, plaintiffs’ reliance on Sample is misplaced. We relied on the suspect’s hand movements in Sample to show that no reasonable officer would feel threatened by a suspect complying with his or her orders. See id. at 697. Unlike in Sample, however, Withers’ action in this case was not responsive to the officers’ commands. The officers in this case repeatedly ordered Withers to come out and he refused. Under those circumstances, a reasonable officer would feel threatened by a person suddenly raising his arm toward the officer upon being discovered. Moreover, having a suspect surrounded does not necessarily diminish the dangerousness of the situation. Withers continued to pose a significant threat because, had he been armed, he could have shot the officers from inside the closet or charged the officers with a weapon. See Reese v. Anderson, 926 F.2d 494, 501 (5th Cir.1991) (“The fact that the vehicle was ‘totally surrounded’ by police does not change matters; had [the victim] in fact retrieved a gun from beneath his seat, he could have caused injury or death despite the presence of numerous police officers.”). The fact that officers had Withers surrounded meant that Withers had only two options: surrender or resist in order to avoid arrest. Zola and the other officers had no way of knowing what course Withers was going to choose. If anything, his previous course of conduct indicated he was determined to avoid arrest. See Pollard v. City of Columbus, Ohio, 780 F.3d 395, 403 (6th Cir.2015) (stating that “the officers knew [the defendant] was determined to avoid arrest, even at the expense of others’ safety and his own life,” in finding the officers’ use of force objectively reasonable).
Plaintiffs also assert that the other two officers present in the basement did not see any movement from Withers that would justify the use of deadly force, which shows that Zola’s actions were objectively unreasonable. They note that Shapiro testified at his deposition that he did not see a hand come up and that Shoulders testified that he did see a hand come up, but did not see a weapon. This argument misunderstands the legally relevant question: how would a reasonable officer in Zola’s shoes — not Shoulders’ or Shapiro’s — act? It also neglects the specific facts of this case. Shapiro was standing off to the side and admitted he could not see into the closet; Shoulders was standing next to the door but could not see who was inside, only a hand emerge; Zola was acting as point-person and was therefore the person in the line of fire. He testified without contradiction that he saw a silhouette and an arm come up quickly toward him. Thus, it is entirely possible for a person in Zola’s position to reasonably believe deadly force was necessary while his team members did not.
For its part, the majority relies on the statement in Dennis Daniel’s affidavit that an officer yelled “get down fucker, get down, fucker” before Zola fired his weapon. According to the majority, this creates a genuine issue of material fact as to whether Zola actually acted a split-second after seeing Withers’ arm go up. I disagree. As the district court held, the “get down” statement does not contradict the fact that Zola could barely see Withers’ silhouette or that Withers made a sudden movement with his right hand. It also *428 does not rebut the undisputed testimony that Zola reacted in less than a split-second after Withers shot his right arm up quickly. This peripheral point is insufficient to create a genuine issue of material fact that requires jury resolution. See Baker, 471 F.3d at 605 (“A genuine issue for trial exists only when there is sufficient evidence on which the jury could reasonably find for the plaintiff.”) (internal quotation marks omitted). Nor does it support plaintiffs’ legal argument that this case is analogous to Sample; quickly raising an arm is not responsive to the command, “get down.”
The majority also states that “the record makes clear that the officers repeatedly ordered Withers to ‘show us your hands’ in the moments before the shooting.” This statement has no support in the record. Neither Sergeant Shoulders nor Detective Shapiro testified that they told Withers to “show us your hands.” Zola testified that one of the commands he gave while all three officers were giving instructions to Withers was “show us your hands.” However, both Shapiro and Shoulders testified without contradiction that the officers had stopped giving commands during the basement search before opening the closet door. As Shapiro put it, “I think we had exhausted all that. I mean, we called out I don’t know how many times throughout the house; the upstairs, the third floor, initially at the basement, come out Danny, we don’t want to shoot your dog, come on out. But did I say anything immediately before the door opened, no.” It is therefore inaccurate to assert that “officers” repeatedly ordered Withers to show his hands “only moments” before the shooting. This misreading of the record makes all the difference because, based on the officers’ undisputed testimony, Withers’ movement could not have been responsive to any command to show his hands given much earlier during the course of the search. See Pollard, 780 F.3d at 403 (“It is the[] facts immediately preceding the shooting which weigh most heavily in assessing the officers’ split-second decision to shoot.”).
For all the majority’s efforts at manufacturing disputed issues of fact, the record makes two things unalterably clear: (1) officers stopped instructing Withers to come out as they proceeded to search the basement, and (2) Zola acted quickly in response to a suspicious movement by a potentially armed fugitive. I would hold that under the totality of the circumstances, which include a suspected armed and dangerous felon lying in wait in a dark basement making a sudden and unexpected movement without announcing an intention to surrender, Zola acted reasonably in using deadly force. I would therefore affirm the district court’s decision to grant Zola summary judgment on qualified immunity grounds.
Finally, because the district court correctly determined no constitutional violation occurred, it likewise correctly granted the City of Cleveland’s motion to dismiss. See id. at 401 (“The deprivation of a constitutional right is a prerequisite to municipal liability under § 1983.”).
IV.
For these reasons, I would affirm the judgment of the district court and therefore respectfully dissent.

. Plaintiffs also alleged several state-law claims against Zola; an unconstitutional search claim and other state-law claims against all the officers; and various municipal liability claims against the City of Cleveland arising out of the constitutional violations committed by the other officers. The district court granted defendants summary judgment on those claims, and plaintiffs have not challenged those decisions on appeal.