NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0023n.06

Case No. 15-3110

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 13, 2016
DEBORAH S. HUNT, Clerk

DAN WITHERS, Individually and as )
Administrator of the Estate of Danny Withers; )
LAVETTE CARR, )
                                              )
                                              )     ON APPEAL FROM THE UNITED
        Plaintiffs-Appellants, )                   STATES DISTRICT COURT FOR
                                              )     THE NORTHERN DISTRICT OF
v.                                            )     OHIO
                                              )
CITY OF CLEVELAND; THOMAS )
SHOULDERS; DAVID SHAPIRO; DANIEL )
ZOLA; JOHN/JANE DOES 11-30, )
                                              )
        Defendants-Appellees. )

_____/

Before: MERRITT, DAUGHTREY, and GRIFFIN, Circuit Judges

**MERRITT, Circuit Judge.** Cleveland police officer Daniel Zola, in the execution of an arrest warrant, shot and killed Daniel Withers, an unarmed twenty-one-year-old man, in a basement closet at the home Withers shared with his grandmother. Withers's parents sued the city and Zola under 42 U.S.C. § 1983, asserting a constitutional violation of Withers's Fourth Amendment right to be free from unreasonable seizure. After limited discovery, the District Court entered summary judgment in favor of Zola and granted the City of Cleveland's motion to dismiss Withers's municipal liability claim. It found that Zola acted reasonably as a matter of

law when he shot and killed Withers. As in our recent Cleveland police shooting case, *Lopez v. City of Cleveland*, No. 14-4277, 2015 WL 5166954 (6th Cir. Sept. 4, 2015), we conclude that there is a material dispute of fact that requires a jury trial under the Seventh Amendment ("the right to a trial by jury shall be preserved . . . according to the rules of the common law"). U.S. CONST. amend. VII. We follow the same standards announced in the *Lopez v. City of Cleveland* case:

> "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." *Tolan* [*v. Cotton*, — U.S. —,] 134 S.Ct. [1861,] 1865 [(2014)]. Under the first prong, a court must determine whether "the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right [.]'" *Id.* (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Under the second prong, a court must determine whether the right was "clearly established" at the time of the alleged violation. *Id.* at 1866. "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id.* This is "an application of the more general rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson* [*v. Liberty Lobby*], 477 U.S. [242], 249 [(1986)]).

*Lopez*, No. 14-4277 at *2.

Because the District Court improperly disregarded the factual disputes underlying Withers's claim against Zola, we **REVERSE** the court's grant of summary judgment in Zola's favor and **REMAND** for further proceedings consistent with this opinion.

## I. Facts

On the night of September 30, 2010, Cleveland police officers Thomas Shoulders, David Shapiro, and Daniel Zola executed an arrest warrant for Daniel Withers, an armed bank robbery suspect who had allegedly threatened to "blow [the teller's] head off." The officers arrived at the home Withers shared with his grandmother and saw a man that they presumed to be Withers in the upstairs window. After the man disappeared from the window, the officers obtained

Withers's grandmother's consent to search the house. The three officers cleared the upper floors of the house, leaving only the basement to be searched. Once backup arrived to secure the perimeter, Shoulders, Shapiro, and Zola conducted a search of the basement.

Shoulders entered the basement first, followed by Shapiro and Zola, respectively. Because only a single light illuminated the basement, the officers used their flashlights to provide additional lighting during the search. After entering the basement, the officers repeatedly ordered Withers to come out and "*show us your hands*." Having cleared the rest of the house, the officers zeroed in on the last place they had yet to search, the built-out closet in the far left corner of the basement. Shoulders positioned himself by the closed closet door while Zola moved into a tactical position at a twenty to thirty degree angle from the door. **[R. 38, Page ID #: 737, 739-40; R. 38-1, Page ID #: 783]**. Shapiro stood in the area behind Zola.

From this point on, the facts are in dispute. Zola testified that when Shoulders opened the door, Zola saw a body and "an arm [that] flew up real fast" on the right side of the body. According to Zola's testimony, he fired a single deadly shot into the person's chest "[l]ess than a split second" later. At the time Zola fired at the figure in the closet, he saw no weapon, and because of the angle of Zola's position in relation to the closet, Zola was unable to see the left side of the person's body. **[R. 38, Page ID #: 739-40; R. 38-1, Page ID #: 849]**.

A neighbor named Dennis Daniels contradicted Zola's testimony by offering a different account of the shooting. After Withers had been removed from the house, Daniels overheard a conversation in the front yard of Withers's home between two Cleveland police officers, a superior officer and another male officer who had been inside the basement when Withers was shot. Daniels observed and heard the superior officer, who was not present at the shooting, ask the junior officer, who *was* present at the shooting, what happened inside the basement.

Apparently the junior officer was Zola. He stated that he saw Withers, "we [the officers] said 'get down fucker, get down fucker,'" and then he shot Withers.

In the moments after the shooting, Zola and his colleagues searched the person for a firearm; the person was unarmed. The person was identified as Daniel Withers. Withers later died from his gunshot wound.

Withers's parents sued Zola and the City of Cleveland under 42 U.S.C. § 1983, asserting a violation of Withers's constitutional rights, including his right under the Fourth Amendment to be free from unreasonable seizure. After limited discovery, Zola moved for summary judgment. The District Court granted summary judgment in favor of Zola after finding, as a matter of law, that Zola acted reasonably when he shot Withers. *Withers v. City of Cleveland*, No. 1:11CV2004, 2014 WL 1761925, at *1 (N.D. Ohio May 1, 2014). Because the District Court found that Zola's use of deadly force was reasonable as a matter of law, it did not specifically address the qualified immunity question of whether the constitutional right at issue was clearly established. *Id.* at *5. Having found no underlying constitutional violation, the court dismissed Withers's claim against the City of Cleveland.

## II. Analysis

We set out the standard for qualified immunity in the introductory paragraphs above. Qualified immunity in cases involving claims of excessive use of deadly force is difficult to determine on summary judgment because an officer's liability turns upon the Fourth Amendment's reasonableness test. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902 (6th Cir. 1998); *see also Lytle v. Bexar County, Tex.*, 560 F.3d 404, 411 (5th Cir. 2009) (quoting *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999) (stating that "reasonableness under the Fourth Amendment should frequently remain a question for the jury")). An officer's use of deadly force

is reasonable only if "the officer has probable cause to believe the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3 (1985). The proper application of the Fourth Amendment reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This is an objective test, to be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* While the evaluation of reasonableness must also recognize that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," *id.* at 396-97, the fact that "a situation unfolds relatively quickly 'does not, by itself, permit officers to use deadly force,'" *Estate of Kirby v. Duva*, 530 F.3d 475, 483 (6th Cir. 2008) (quoting *Smith v. Cupp*, 430 F.3d 766, 775 (6th Cir. 2005)); *see also Chappell v. City of Cleveland*, 585 F.3d 901, 915 (6th Cir. 2009) ("If [Cleveland] detectives had fired immediately upon finding [the suspect] hiding in the closet with a knife, their actions would certainly be held objectively unreasonable.").

Summary judgment is inappropriate where there are factual disputes regarding the reasonableness of an officer's use of deadly force. *See, e.g.*, *Sova*, 142 F.3d at 903. When the reasonableness of an officer's use of deadly force is "completely dependent upon which view of facts is accepted by the jury," a court may not grant an officer immunity from a deadly force claim. *Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th Cir. 1989). We have repeatedly held that when the legal question of qualified immunity depends on which version of the facts one accepts, the jury, not the judge, acts as the final arbiter of immunity. *Scozzari v. Miedzianowski*,

454 Fed. Appx. 455, 463 (6th Cir. 2012); *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007); *Sova*, 142 F.3d at 903. This is especially true where, as here, the "District Court must view the facts in the light most favorable to the plaintiff on a motion for summary judgment." *Sova*, 142 F.3d at 903.

The District Court erred in finding that Zola acted reasonably as a matter of law when he fatally shot Withers. The parties advance two irreconcilable versions of what occurred in the moments before the shooting, and because a *genuine* dispute of *material* fact regarding the reasonableness of Zola's use of deadly force exists, we are compelled to reverse the District Court's grant of summary judgment to Zola. First, the statement in Dennis Daniels's affidavit contradicts Zola's testimony and creates a genuine issue of material fact as to whether Zola's decision to use deadly force was reasonable. Second, the officers' testimony creates a genuine issue of material fact as to whether Zola's use of deadly force was objectively reasonable. We address each of these errors in turn.

The District Court concluded that the statement in Dennis Daniels's affidavit that officers yelled the obscenity "get down fucker, get down fucker" before Zola fatally shot Withers did not, for the purposes of summary judgment, contradict Zola's testimony that he shot Withers "[l]ess than a split second" after Shoulders opened the closet door. The court found that this evidence did not create a genuine issue of material fact because "it neither disputes the fact that [Zola] could barely see Withers's silhouette nor that Withers made a sudden movement with his right hand." *Withers*, No. 1:11CV2004 at *9. The District Court's conclusion is in error because it fails to consider that there was a lapse of time between Zola's discovery of Withers and his shooting Withers. This lapse in time between the two events creates a dispute that goes to the

heart of whether the shooting took place in a "split second" and whether it was reasonable for Zola to use deadly force against Withers.

Drawing all inferences in Withers's favor, as we must, the statement in Daniels's affidavit contradicts Zola's testimony that he shot Withers in "[l]ess than a split second." Zola could not have possibly identified a body, shouted the obscenity, and then shot Withers—all in "[l]ess than a split second." This contradiction creates a genuine issue of *material* fact because the length of time between Zola's discovery of Withers and his use of deadly force against Withers bears on the reasonableness of Zola's use of deadly force. That is, if a jury credits Daniels's testimony, it could reasonably infer that Zola's actions were unreasonable because he would have had more time than he claimed—much more than "[l]ess than a split second"—to ascertain whether Withers was armed before he shot and killed Withers for making a hand gesture consistent with the officers' lawful orders to "show us your hands." We have previously held that an officer's use of deadly force is not reasonable as a matter of law when "the circumstances [] present a genuine question [as to] whether the situation compel[s] a split-second decision to use lethal force." *Scozzari*, 454 Fed. Appx. at 463 (affirming the District Court's denial of summary judgment in part because a genuine issue of material fact existed as to whether officers were forced to make a split-second decision when a suspect wielding a hatchet charged them); *see also Estate of Kirby*, 530 F.3d at 482-83 (affirming the District Court's denial of summary judgment in part because the officers were not forced to make a split-second decision when they "had sufficient time [a few seconds] under the plaintiffs' account to assess the situation before firing several rounds at the suspect"); *Sample v. Bailey*, 409 F.3d 689, 700 (6th Cir. 2005) (stating that "[o]nce a suspect has been found, however, and the police have weapons directed at him . . . the inherent danger to the officers resulting from a hidden suspect in

an enclosed, unfamiliar area at night is diminished"). Thus, because the statement in Daniel's affidavit creates a genuine issue of material fact as to whether Zola acted reasonably in fatally shooting Withers, the District Court's grant of summary judgment to Zola was in error.

In addition to Daniels's testimony, Zola's deposition demonstrates that the officers repeatedly ordered Withers to "show us your hands" as they searched the basement in the moments before the shooting. This command casts doubt on the reasonableness of Zola's use of deadly force because a reasonable officer could certainly expect a suspect to make gestures with his arms and hands consistent with the lawful order to "show us your hands" given only moments earlier. *See Sample*, 409 F.3d at 697 (stating that arresting officers should expect suspects to make movements consistent with lawful orders). In fact, Shapiro testified that when an officer yells "show us your hands," the "normal reaction is [for the suspect] to show you [his] hands." Our dissenting colleague states that there is no support in the record for the fact that the officers repeatedly ordered Withers to "show us your hands" as they searched the basement in the moments before the shooting. *Post,* at 11. Here is the support from Zola's deposition that we rely on:

> Q. And while you were in the basement, had you yelled out any orders to Danny Withers?
>
> A. Yes.
>
> Q. What had you yelled out?
>
> . . .
>
> A. That we were looking for him and if he was down there, please let us know you're down here and *show us your hands*. And we didn't hear anything.
>
> Q. Had you heard either Officer Shoulders or Officer Shapiro also yelling out instructions or commands?

A. Yes.

Q. What had you heard Officer Shoulders yell out?

A. *The same thing*. He was yelling for Danny Withers, if you're down here, just say something. Come out.

Q. How about Officer Shapiro?

A. *The same thing*. Cleveland Police, if you're down here, say something. We'll bring you out.

**[R. 38, Page ID #: 734-35]** (emphasis added). Our dissenting colleague also emphasizes that neither Shoulders nor Shapiro testified that they commanded Withers to "show us your hands." *Post*, at 11. As the City of Cleveland recognizes in its brief, the relevant legal question is "what Officer Zola knew at the time" of the shooting. (Appellee Br. 10). Consequently, Zola's statement that the officers commanded Withers "to show us your hands" in the moments before the shooting is the only testimony that relates to Zola's mental state at the time of the shooting, which is the relevant legal question.

The District Court also failed to consider a related fact: Zola could not see the left side of Withers's body because Zola's position in relation to the closet obstructed his view of Withers. Zola's inability to view the entire left side of Withers's body forecloses a finding that Withers's movement of his right arm did not comply with the officers' "show us your hands" command. Because Zola could only see Withers's right arm, Withers's movement of his arm was consistent with the officers' lawful order for Withers to "show us your hands."

A jury could decide that a reasonable officer would see Withers's gesture as an act of compliance with the officers' lawful commands. The jury could believe that Withers's gesture was consistent with surrender because the officers had announced that they were armed while he was unarmed and shirtless. The case is similar to *Sample*, 409 F.3d at 697, in which we affirmed

the denial of an officer's motion for summary judgment because the officer's use of deadly force against a suspect who moved his hands to comply with the officer's commands was unreasonable. In distinguishing *Sample*, the District Court necessarily implied that, unlike the suspect in *Sample*, Withers did not comply with Zola's commands. *Sample*, 409 F.3d at 697. This is a jury question. Zola testified that the officers repeatedly commanded Withers to "show us your hands" in the moments before the shooting, and while Zola's view of Withers's left arm was obstructed, he did see Withers raise his right arm, an action that was consistent with the officers' commands. **[R. 38, Page ID: 735, 739-40]**.

Thus, because the officers' testimony creates a genuine issue of material fact as to whether Zola acted reasonably in fatally shooting Withers, the District Court erred in granting Zola summary judgment.

### III. Clearly Established Law

In light of its holding that Zola committed no constitutional violation, the District Court did not reach the clearly established prong of the qualified immunity analysis, and the City of Cleveland made no arguments regarding this prong on appeal. Although we only decide the issue before us, we emphasize that the law was clearly established that an officer may not use deadly force against a suspect unless "the officer has probable cause to believe the suspect poses a significant threat of death or serious physical injury to the officer or others." *Garner*, 471 U.S. at 3. Because there are disputes of fact that relate directly to this issue, it appears that Zola cannot establish that he is entitled to qualified immunity based on the clearly established prong of the qualified immunity analysis. In *Tolan v. Cotton*, 134 S.Ct. at 1866, the Supreme Court explained that a court should not resolve disputes of fact in the qualified immunity analysis, just

as our court observed in *Lopez v. City of Cleveland*, quoted in the introductory paragraphs of the opinion.

## IV.  Municipal Liability

The District Court dismissed Withers's § 1983 claim against the City of Cleveland after finding that Zola's use of deadly force was reasonable as a matter of law.  Given our holding as to that issue, we also reverse the District Court's dismissal of Withers's municipal liability claim and remand for further consideration in light of these proceedings.

Accordingly, we **REVERSE** the judgment of the District Court and **REMAND** for further proceedings consistent with this opinion.

GRIFFIN, Circuit Judge, dissenting.

This suit under 42 U.S.C. § 1983 arises from the fatal shooting of Danny Withers by Detective Daniel Zola of the Cleveland Police Department. Zola moved for summary judgment on the basis of qualified immunity, which the district court granted, finding that Zola's actions were objectively reasonable under the circumstances. Having found no underlying constitutional violation by Zola, the district court also granted the City of Cleveland's motion to dismiss plaintiffs' municipal liability claims. Plaintiffs appeal both decisions. I would affirm and therefore respectfully dissent.

I.

On September 30, 2010, Cleveland police executed an arrest warrant for Danny Withers stemming from an armed bank robbery during which he allegedly threatened to "blow [the teller's] head off." The group of officers who executed the warrant included Sergeant Thomas Shoulders and Detectives David Shapiro and Daniel Zola. They visited Withers' grandmother's house, where police suspected he lived. When they arrived, they saw a man in an upstairs window and asked if "Kevin" was there. After the person responded that no one by that name lived there, Shapiro shouted, "Danny, it's the police." The man then disappeared from the window, and the police resumed knocking on the door. Withers' grandmother eventually answered the door and told the officers that Danny Withers lived there. Thereafter, the police entered the house and began searching for Withers, all the while calling Withers' name and instructing him to come out. Police cleared the upper floors, leaving the basement for last. Once backup arrived to secure the perimeter, the three officers proceeded to check the basement.

The basement was not well lit. It had only one light at the foot of the stairs, requiring the officers to use their flashlights for illumination. They continued to call out for Withers and

instructed him to come out, but he did not respond. The officers identified what looked like a closet, and Shoulders moved into position next to the door to open it. Zola stood in front of the door, slightly off to one side, about 6 feet away, with his flashlight fixed on the door and his gun drawn. Shoulders opened the door "quickly." Once the door opened, Zola saw the silhouette of a person and "on the right side of his body an arm flew up real fast." Zola fired a single shot, hitting the person in the chest. Police secured the person, whom they identified as Danny Withers, and called EMS.

Later, the police found a screwdriver lying near Withers. Also, as police gathered outside the house after the shooting, an individual named Dennis Daniel allegedly overheard an unidentified officer say, "we said 'get down fucker, get down, fucker' and then he shot."

Danny Withers later died at the hospital.

Withers' parents filed suit on behalf of themselves and his estate, claiming violations of Withers' federal civil rights under 42 U.S.C. § 1983. The only claims at issue in this appeal are plaintiffs' Fourth Amendment claim of excessive force against Zola and their municipal liability claims against the City of Cleveland arising out of Zola's alleged constitutional violation.[1]

Zola filed a motion for summary judgment based on qualified immunity. Plaintiffs contested the motion, arguing that genuine issues of material fact existed and that additional discovery was needed. The district court allowed limited discovery on plaintiffs' excessive force claim, which included depositions of Zola, Shapiro, and Shoulders. Following additional briefing by the parties, the district court granted Zola's motion, ruling that there were no genuine issues of material fact and that the undisputed facts established that Zola's actions were

---

[1]Plaintiffs also alleged several state-law claims against Zola; an unconstitutional search claim and other state-law claims against all the officers; and various municipal liability claims against the City of Cleveland arising out of the constitutional violations committed by the other officers. The district court granted defendants summary judgment on those claims, and plaintiffs have not challenged those decisions on appeal.

objectively reasonable. In addition, the district court dismissed plaintiffs' claims against the City of Cleveland because, "[h]aving found no [underlying] constitutional violation . . . , it is axiomatic that there can be no municipal liability for the lawful conduct of the officers."

Plaintiffs timely appeal the decisions.

II.

Our standard of review is well established:

> This court reviews de novo the district court's entry of summary judgment. Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. A genuine issue for trial exists only when there is sufficient evidence on which the jury could reasonably find for the plaintiff. In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party.

*Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 605 (6th Cir. 2006) (citations and quotation marks omitted). At the summary judgment stage, "[i]f all material facts are undisputed, the reasonableness of officer conduct in an excessive-force claim is a question of law," which this court reviews de novo. *Stricker v. Twp. of Cambridge*, 710 F.3d 350, 364 (6th Cir. 2013) (citing *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007)).

This is an action for civil damages under 42 U.S.C. § 1983 for violation of Withers' constitutional rights. The doctrine of qualified immunity shields governmental officials like Detective Zola from civil liability as long as "their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). When a defendant invokes qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to the defense. *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011).

To determine whether a defendant is entitled to qualified immunity, the Supreme Court instructs lower courts to perform a two-part inquiry. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). Courts should examine whether "the facts alleged show the officer's conduct violated a constitutional right" and "whether the right was clearly established." *Id.* We may exercise our discretion and perform the inquiry in either order. *Pearson*, 555 U.S. at 236. However, a plaintiff must satisfy both parts of the inquiry in order to defeat the assertion of qualified immunity. *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015). In this case, the district court determined that no constitutional violation occurred and, thus, did not examine whether the constitutional right at issue was clearly established.

### III.

Plaintiffs allege that Zola violated Withers' Fourth Amendment right to be free from excessive force. We apply the Fourth Amendment's "objective reasonableness" standard when analyzing claims that an officer used excessive force during the course of an arrest. *Baker*, 471 F.3d at 606. In the context of the use of deadly force, the reasonableness of an officer's actions depends on whether "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007) (ellipsis omitted); *see also id.* ("[T]he Fourth Amendment prohibits a police officer's use of deadly force to seize an unarmed, non-dangerous suspect.") (quoting *Sample v. Bailey*, 409 F.3d 689, 696 (6th Cir. 2005) (bracketing in original)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Conner*, 490 U.S. 386, 396 (1989). Our evaluation of reasonableness must also recognize the

reality that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

The Supreme Court has identified three, nonexclusive factors for determining the reasonableness of force used: "(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the police officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." *Baker*, 471 F.3d at 606 (citing *Graham*, 490 U.S. at 396); *see also id.* at 606–07 ("These factors are not an exhaustive list, as the ultimate inquiry is whether the totality of the circumstances justifies a particular sort of seizure.") (quotation marks omitted). These considerations, particularly the second factor involving an immediate threat to officer safety, demonstrate that Zola's decision to exercise force was objectively reasonable under all the circumstances of this case.

Here, the undisputed facts establish that at the time of the shooting Zola and the other officers were in a dark, unfamiliar basement searching for a fugitive suspected of armed bank robbery and who threatened to "blow [the teller's] head off" if she did not comply with his orders. Having already searched the rest of the house, the officers reasonably believed Withers may have been in the basement. By that time, the officers had repeatedly called for Withers to come out, to no avail. Under these circumstances, a reasonable officer would conclude that Withers was likely armed and lying in wait, posing a threat to officer safety. Once in the basement, the officers encountered an unlocked closet door. Detective Zola was in the "point-person" position, placing him in the line of fire in the event there was a person inside armed with a weapon. When Sergeant Shoulders opened the door, Zola could only see what was illuminated by his flashlight, which was a person's silhouette. After the door opened, Zola also saw a

person's right arm come up quickly. In Zola's words, "His arm came up real fast. . . . It was so fast you could not distinctively see what was in his hand or tell if he was going to shoot." Presented with this sudden movement under these "tense, uncertain, and rapidly evolving" circumstances, and given Zola's knowledge of Withers' criminal history and resistance to arrest, a reasonable officer in Zola's position would have made the split-second judgment that the person in the closet posed a threat of serious physical harm to himself and the other officers. *Graham*, 490 U.S. at 397. Although we know now that Withers was unarmed, the clarity of hindsight does not obscure the fact that, *under the circumstances existing at that time*, when Withers quickly raised his arm, a reasonable officer would perceive a threat and use deadly force for his own protection. *See id.* at 396 (instructing that "reasonableness" is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"). Given the totality of the circumstances confronting Zola at that moment, his decision to fire his weapon, while tragic in hindsight, was objectively reasonable at the time he decided to exercise force.

In arguing to the contrary, plaintiffs rely primarily on *Sample*. In that case, the defendant officers responded to a reported break-in at a commercial building after hours. *Sample*, 409 F.3d at 691. When they arrived, they saw a person carrying a computer, and when that person noticed the officers, he fled. *Id.* The officers searched the unlit building and came across a cabinet that smelled like alcohol. *Id.* at 692. Suspecting the person was inside, one of the officers, Officer Bailey, opened the door and saw the suspect hiding inside. *Id.* Both of the suspect's hands were clearly visible and empty. *Id.* at 692, 697. As Officer Bailey ordered the plaintiff to come out with his hands up, the second officer, Officer Prexta, holstered his weapon and moved in to arrest the plaintiff. *Id.* at 692. At this point, according to the plaintiff's version of the facts

(which the defendants and this court accepted for purposes of summary judgment), "he reached out with his right hand to grab the edge of the top of the cabinet to pull himself out, [at which point] he was shot several times [by Officer Bailey]." *Id.* at 693. In evaluating whether the defendant engaged in excessive force, this court concluded that "[Officer] Bailey was not faced with a serious threat of physical harm to himself or his partner which would necessitate the use of deadly force." *Id.* at 697. This court held a reasonable officer would not have felt threatened by the plaintiff's hand movement because, by reaching out to grab the top of the cabinet, the plaintiff was simply complying with the officers' instructions. *Id.* Moreover, his hands were visible and empty, he was not verbally threatening the officers, and he was curled up in a cabinet, unable to charge the officers. *Id.* Even considering the fact that the room was dark, the alarm was sounding, and the plaintiff was unresponsive, this court held that the surrounding circumstances did not justify the defendant's use of deadly force. *Id.*

In the present case, plaintiffs draw a number of parallels to *Sample*, none of which hold up to scrutiny. The chief similarity, according to plaintiffs, is that, like in *Sample*, Withers was unarmed. However, the defendant officer in *Sample knew* that the suspect was unarmed; he had an extended period of time to observe the suspect's hands; and he saw that the suspect was curled up without a weapon in his hands. *See id.* at 692, 697. On these facts, *Sample* held that a reasonable officer would not feel threatened by a suspect lying in a cabinet with nothing in his hands who reaches out in order to comply with the officer's commands. But those are not the facts of this case. Here, Detective Zola did not know whether there was someone in the closet; he did not have an extended opportunity to see what, if anything, was in Withers' hand before Withers made a movement; and he only saw the silhouette of a person standing and an arm raise up quickly toward him ("It was so fast you could not distinctively see what was in his hand or

tell if he was going to shoot."). Thus, unlike in *Sample*, Zola did not have the opportunity to confirm whether Withers was armed or unarmed. Even *Sample* itself recognized how critical this factual distinction is:

> Our dicta in *Robinette* [*v. Barnes*, 854 F.2d 909 (6th Cir. 1988)] recognized the inherent dangers facing police officers searching for a suspect who is hiding from them. In such a situation, officers have an unquestionable right to protect themselves from a possible ambush. Once a suspect has been found, however, and the police have weapons directed at him, as in this case, the inherent danger to the officers resulting from a hidden suspect in an enclosed, unfamiliar area at night is diminished.

*Id.* at 700. In addition, unlike in *Sample*, Zola had reason to believe Withers was potentially armed because he was suspected of committing an armed robbery. Based on these facts, I would hold that a reasonable officer would feel threatened by a person suspected of a violent crime standing in a closet who moves their arm quickly toward the officer before the officer has a chance to observe whether the person was armed. The critical factual differences between this case and *Sample* would make such a holding entirely harmonious with *Sample*.

Plaintiffs further contend that, like in *Sample*, the officers had Withers surrounded and his hand gesture was arguably consistent with surrendering. Again, plaintiffs' reliance on *Sample* is misplaced. We relied on the suspect's hand movements in *Sample* to show that no reasonable officer would feel threatened by a suspect complying with his or her orders. *See id.* at 697. Unlike in *Sample*, however, Withers' action in this case was not *responsive* to the officers' commands. The officers in this case repeatedly ordered Withers to come out and he refused. Under those circumstances, a reasonable officer would feel threatened by a person suddenly raising his arm toward the officer upon being discovered. Moreover, having a suspect surrounded does not necessarily diminish the dangerousness of the situation. Withers continued to pose a significant threat because, had he been armed, he could have shot the officers from

inside the closet or charged the officers with a weapon. *See Reese v. Anderson*, 926 F.2d 494, 501 (5th Cir. 1991) ("The fact that the vehicle was 'totally surrounded' by police does not change matters; had [the victim] in fact retrieved a gun from beneath his seat, he could have caused injury or death despite the presence of numerous police officers."). The fact that officers had Withers surrounded meant that Withers had only two options: surrender or resist in order to avoid arrest. Zola and the other officers had no way of knowing what course Withers was going to choose. If anything, his previous course of conduct indicated he was determined to avoid arrest. *See Pollard v. City of Columbus, Ohio*, 780 F.3d 395, 403 (6th Cir. 2015) (stating that "the officers knew [the defendant] was determined to avoid arrest, even at the expense of others' safety and his own life," in finding the officers' use of force objectively reasonable).

Plaintiffs also assert that the other two officers present in the basement did not see any movement from Withers that would justify the use of deadly force, which shows that Zola's actions were objectively unreasonable. They note that Shapiro testified at his deposition that he did not see a hand come up and that Shoulders testified that he did see a hand come up, but did not see a weapon. This argument misunderstands the legally relevant question: how would a reasonable officer in *Zola's* shoes—not Shoulders' or Shapiro's—act? It also neglects the specific facts of this case. Shapiro was standing off to the side and admitted he could not see into the closet; Shoulders was standing next to the door but could not see who was inside, only a hand emerge; Zola was acting as point-person and was therefore the person in the line of fire. He testified without contradiction that he saw a silhouette and an arm come up quickly toward him. Thus, it is entirely possible for a person in Zola's position to reasonably believe deadly force was necessary while his team members did not.

For its part, the majority relies on the statement in Dennis Daniel's affidavit that an officer yelled "get down fucker, get down, fucker" before Zola fired his weapon. According to the majority, this creates a genuine issue of material fact as to whether Zola actually acted a split-second after seeing Withers' arm go up. I disagree. As the district court held, the "get down" statement does not contradict the fact that Zola could barely see Withers' silhouette or that Withers made a sudden movement with his right hand. It also does not rebut the undisputed testimony that Zola reacted in less than a split-second after Withers shot his right arm up quickly. This peripheral point is insufficient to create a genuine issue of *material* fact that requires jury resolution. *See Baker*, 471 F.3d at 605 ("A genuine issue for trial exists only when there is sufficient evidence on which the jury could reasonably find for the plaintiff.") (internal quotation marks omitted). Nor does it support plaintiffs' legal argument that this case is analogous to *Sample*; quickly raising an arm is not responsive to the command, "get down."

The majority also states that "the record makes clear that the officers repeatedly ordered Withers to 'show us your hands' in the moments before the shooting." This statement has no support in the record. Neither Sergeant Shoulders nor Detective Shapiro testified that they told Withers to "show us your hands." Zola testified that one of the commands he gave while all three officers were giving instructions to Withers was "show us your hands." However, both Shapiro and Shoulders testified without contradiction that the officers had stopped giving commands during the basement search before opening the closet door. As Shapiro put it, "I think we had exhausted all that. I mean, we called out I don't know how many times throughout the house; the upstairs, the third floor, initially at the basement, come out Danny, we don't want to shoot your dog, come on out. But did I say anything immediately before the door opened, no." It is therefore inaccurate to assert that "officers" repeatedly ordered Withers to show his

hands "only moments" before the shooting. This misreading of the record makes all the difference because, based on the officers' undisputed testimony, Withers' movement could not have been *responsive* to any command to show his hands given much earlier during the course of the search. *See Pollard*, 780 F.3d at 403 ("It is the[] facts immediately preceding the shooting which weigh most heavily in assessing the officers' split-second decision to shoot.").

For all the majority's efforts at manufacturing disputed issues of fact, the record makes two things unalterably clear: (1) officers stopped instructing Withers to come out as they proceeded to search the basement, and (2) Zola acted quickly in response to a suspicious movement by a potentially armed fugitive. I would hold that under the totality of the circumstances, which include a suspected armed and dangerous felon lying in wait in a dark basement making a sudden and unexpected movement without announcing an intention to surrender, Zola acted reasonably in using deadly force. I would therefore affirm the district court's decision to grant Zola summary judgment on qualified immunity grounds.

Finally, because the district court correctly determined no constitutional violation occurred, it likewise correctly granted the City of Cleveland's motion to dismiss. *See id.* at 401 ("The deprivation of a constitutional right is a prerequisite to municipal liability under § 1983.").

IV.

For these reasons, I would affirm the judgment of the district court and therefore respectfully dissent.